| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 08433 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| TERRY JAMES MAIER and | ) | |
| DENISE LYNN MAIER, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants Terry Maier and Denise Maier are self-employed. For the 2003 through 2007 tax years, they did not file timely federal income tax returns. Between 2009 and 2012, they submitted many Forms 1040 and 1041 for tax years 2003 through 2008, some asserting that the Maiers had no income, and some bearing stamps suggesting that the Maiers did not owe income taxes. Between 2010 and 2012, the IRS determined that the Maiers had submitted dozens of frivolous income tax returns and assessed penalties of $5,000 for each one. The IRS also calculated the Maiers' income tax liability for years 2003 through 2007. The Maiers have not made payments on the penalties or the assessed income taxes.

In November 2017, the United States sued the Maiers, seeking to reduce the unpaid tax liabilities to a monetary judgment and to enforce its tax liens against the Maiers' real property. R. 1, Compl.[1] The Maiers had transferred the real properties,

---

[1] Citations to the record are noted as "R." followed by the docket number and the page or paragraph number. The Court has jurisdiction over this case under 28 U.S.C. §§ 1331, 1340, and 1345. The government also named Banbury Foundation Group, BMO Harris Bank,

in 2007, to an organization called the "Banbury Foundation Group," which the government argues is the Maiers' alter ego or nominee. *See id.* ¶ 60. After a period of discovery, the government filed a motion for summary judgment. R. 54, Mot. Summ. J. In response, the Maiers filed their own motion, *see* R. 65, which the Court interprets as a cross-motion for summary judgment.[2] For the reasons explained below, the government's motion is granted, and the Maiers' motion is denied.

## I. Background

In deciding cross motions for summary judgment, the Court views the facts in the light most favorable to the respective non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). So when the Court

---

and the Kendall County Treasurer-Collector as defendants. In June 2018, the Government moved for default judgment against Banbury Foundation Group and Harris Bank. R. 58, Mot. Default J. Finding that both had been served and neither answered, the Court entered judgment against both Banbury and BMO Harris on July 10, 2018. R. 62, Order on Mot. Default Judgment. As a result, neither has any interest in the properties at issue here. *See id.* The Kendall County Treasurer-Collector has been terminated as a defendant, because the government and Kendall County agreed that the County has no current interest in the properties. R. 21, Minute Order.

   [2]The motion is titled "Motion to Deny Plaintiff's Motion for Summary Judgment and to Dismiss This Case for Failure to State a Claim upon Which Relief Can Be Granted." *See* R. 65. Because the pleading stage in this case is over, the Maiers can no longer file a motion to dismiss the government's complaint. But given their *pro se* status, the Court interprets this document as a cross-motion for summary judgment and a response to the Government's motion.

   The Defendants' filing at R. 65 includes four different documents that would usually be filed separately. The Court will cite to each separately for ease of reading and—going forward—use the page numbers assigned by the Defendants at the bottom of each page. For reference, R. 65 includes: several initial pages of argument in pages 1-6 of the entire document (labeled below as "Defs. Resp."), an affidavit from Terry Maier from pages 7-12 of the document ("Terry Maier Aff."), an affidavit from Denise Maier from pages 13-18 ("Denise Maier Aff."), the Defendants' response to the Government's statement of facts from pages 19-23 ("Defs. Resp. PSOF"), and a memorandum of law expanding on the Maiers' legal arguments in pages 24-42 ("Defs. Memo of Law").

evaluates the government's summary judgment motion, the Maiers gets the benefit of reasonable inferences; conversely, when evaluating the Maiers' filing (which the Court interprets as a cross-motion), the Court gives the government the benefit of the doubt.

### A. The Maiers' Tax Returns

Terry and Denise Maier own their own concrete precast installation business. Compl. ¶ 9; R. 26, Answer ¶ 9. Between 2003 and 2007, the Maiers did not pay income taxes or file timely income tax returns. R. 56, PSOF ¶ 7; R. 65, Defs. Resp. PSOF ¶ 7. Beginning in February 2009, the Maiers began submitting tax returns for the 2003 through 2008 tax years. PSOF ¶ 8; Defs. Resp. PSOF ¶ 8.

In February 2009, the Maiers submitted Forms 1040 for tax years 2003 through 2007 and Forms 1041 for years 2003 through 2008. PSOF ¶ 9; Defs. Resp. PSOF ¶ 9. Both Terry and Denise signed the Forms 1040, and Denise signed the Forms 1041. PSOF ¶¶ 11-12; Defs. Resp. PSOF ¶¶ 11-12. Some of those forms reported no income (they were "zero returns"), and some included stamps and attachments suggesting or explicitly arguing that the Maiers had no tax liability. PSOF ¶ 9; Defs. Resp. PSOF ¶ 9. The IRS determined that the tax returns were frivolous under 26 U.S.C. § 6702, and assessed Denise and Terry $5,000 penalties each for each Form 1040 that they had submitted, and Denise $5,000 penalties per Form 1041 she submitted. PSOF ¶¶ 11-12; Defs. Resp. PSOF ¶¶ 11-12.

On April 15, 2009, the Maiers followed up those tax returns with another zero return for the 2008 tax year. PSOF ¶ 13; Defs. Resp. PSOF ¶ 13. After evaluating

that return, in July 2012, the IRS assessed frivolous filing penalties against Terry and Denise for the 2008 return of $5,000. PSOF ¶ 13; Defs. Resp. PSOF ¶ 13.

In November 2010, the Maiers filed a Form 843, or a Claim for Refund and Request for Abatement for the 2003 tax year, requesting a refund of $5,038.50. PSOF ¶ 14; Defs. Resp. PSOF ¶ 14. The IRS assessed the Maiers $5,000 penalties for that filing as well. *Id*.

Finally, on April 2, 2012, the Maiers submitted multiple Forms 1040 for each tax year between 2004 and 2010 (six for 2008, and five for each of the other years). PSOF ¶ 15; Defs. Resp. PSOF ¶ 15. They were all stamped with language suggesting that the Maiers did not or could not have any income tax liability. PSOF ¶ 15; Defs. Resp. PSOF ¶ 15. In July 2012, the IRS assessed Denise and Terry 41 penalties each for the 41 forms submitted. PSOF ¶ 15; Defs. Resp. PSOF ¶ 15.

The IRS brought this lawsuit to reduce to judgment 47 of the frivolous-filing penalties described above against Terry Maier, and 52 of the penalties it assessed against Denise Maier. PSOF ¶ 16; Defs. Resp. PSOF ¶ 16. The penalties it seeks to reduce to judgment are listed in the table at Exhibit 2A to the government's motion for summary judgment. R. 54-3, Exh. 2A, Summ. of 6702(a) Assess. ('Exhibit 2A"). Based on the Court's review, each row of the table correctly records the dates, signatories, and types of form for each filing that is attached in Exhibit 2B to the government's motion. R. 54-4, R. 54-5, R. 54-6.[3]

_____

[3]Exhibit 2B to the government's motion is divided up into three documents on the docket: R. 54-4, Exh. 2B(i); R. 54-5, Exh. 2B(ii); R. 54-6, Exh. 2B(iii). Because the three documents really constitute the same package of IRS records, and the page numbers between

## B. The Maiers' Properties

Terry and Denise Maier bought the residential property at 14780 Galena Road, Plano, Illinois on June 2, 1978. PSOF ¶ 24; Defs. Resp. PSOF ¶ 24. They bought the business property at 14816 Galena Road on January 15, 2001. PSOF ¶ 25; Defs. Resp. PSOF ¶ 25. In May 2007, the Maiers recorded two warranty deeds purporting to transfer both properties to Banbury Foundation Group (call it "Banbury") for $10 per property. PSOF ¶¶ 26-30; Defs. Resp. PSOF ¶¶ 26-30.[4] As late as 2012, Denise Maier used the residential property's address on her driver's license, PSOF ¶ 40, and the Maiers "operate a mailbox which doubles as Banbury's mailing address," PSOF ¶ 39.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must "view the facts and draw reasonable

---

them are continuous, they will be referred to throughout this Opinion collectively as Exhibit 2B, and the page numbers listed correspond to those in the bottom left corner of each page.

[4]The government argues that the May 2007 deed purporting to transfer the business property to Banbury incorrectly described the business property, listing it as 160 feet wide instead of 150 feet wide. PSOF ¶ 27. But it appears that the extra ten feet included in the description was part of the Maiers' residential property, which was also purportedly transferred to Banbury in May 2007. *Id.* ¶¶ 27-28. Because the Maiers owned both properties, purported to transfer both in May 2007, and continued to exercise control over both properties afterward (see below), the alleged mistake does not affect the Court's analysis.

inferences in the light most favorable to the" non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (cleaned up).[5] The Court "may not weigh conflicting evidence or make credibility determinations," *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (cleaned up), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

### A. Frivolous-Filing Penalties

Under 26 U.S.C. § 6702, "a person shall pay a penalty of $5,000" when she files "what purports to be a return of a tax," but which actually "does not contain information on which the substantial correctness of the self-assessment may be judged, or contains information that on its face indicates that the self-assessment is substantially correct," 26 U.S.C. § 6702(a)(1)(A)-(B), and the person's "conduct" "is based on a position which the Secretary has identified as frivolous, … or reflects a desire to delay or impede the administration of Federal tax laws," 26 U.S.C.

---

[5]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

§ 6702(a)(2)(A)-(B). A tax return "is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law." *Coleman v. Comm'r*, 791 F.2d 68, 72 (7th Cir. 1986). The IRS bears the burden of proving that a taxpayer is liable for a penalty under § 6702. 26 U.S.C. § 6703(a).

Between 2003 and 2007, the Maiers did not pay taxes or file timely tax returns with the IRS. PSOF ¶ 7; Defs. Resp. PSOF ¶ 7. Between 2009 and 2012, however, they submitted numerous Forms 1040 and 1041, as well as one Form 843, which purported to be their tax filings for tax years 2003 through 2008. PSOF ¶¶ 8-16; Defs. Resp. PSOF ¶¶ 8-16. The IRS determined that those filings were frivolous under § 6702 and assessed Terry and Denise $5,000 each for each of the allegedly frivolous filings that they respectively signed. PSOF ¶ 16; Defs. Resp. PSOF ¶ 16.

The filings that the IRS determined were frivolous are all attached to the government's motion for summary judgment. *See* Exh. 2B. The table provided by IRS paralegal Sheryl Williams in Exhibit 2A to the government's motion correctly lists the type and number of the filings attached at Exhibit 2B (including which taxpayer signed each form, the tax year each filing was purportedly for, the Bates numbers of the page range for each filing, and the date that the IRS assessed a penalty for the filing against the respective taxpayer). The Forms 4340 in Exhibit 1 to the government's motion, R. 54-1, confirm that the penalties were assessed against the Maiers—the frivolous-filing penalties for each year for each taxpayer in Exhibit 1 add up to *at least* the amount of the penalties the government claims to have imposed, *see* R. 54-2, Exh. 2, Williams Decl. ¶¶ 16-17, and that it is seeking to reduce to judgment

here, *see* PSOF ¶¶ 17-18; Compl. ¶¶ 23-24. Tax Division attorney Jordan Konig's declaration sets out Konig's calculations of the interest owed on the assessments. R. 54-8, Konig Decl. The print-outs of the interest calculations show that the inputs to the calculations matched the amounts and dates of the assessments set out at Exhibits 2A and 2B of the government's motion. *See* R. 54-9, Exh. 4A, Tax Interest Calculations.[6] The totals are incorporated into the government's Statement of Material Facts at paragraphs 21 and 22.

There is no dispute that the filings at issue here are all frivolous under the statute. All but one of the filings fall into two main categories. First, several of the filings bear stamps that read, in part: "Accepted for value - returned for value [-] exempt from levy - prepaid common stock [-] discharge all presentments and related fees [-] adjust the balance to zero." *See, e.g.*, Exh. 2B at 15. (These filings are marked with the notation "stamped and written over" in Exhibit 2A to the Government's motion.). These filings meet both the conditions for liability identified in § 6702(a). First, they clearly purport to be tax returns, and the stamps constitute "information that on its face indicates that the self-assessment is substantially incorrect." 26 U.S.C. § 6702(a)(1)(B). Although it is not crystal clear what the stamps mean, the descriptions "accepted for value – returned for value," combined with other writings

---

[6]The print-outs do not include calculations of the interest on the penalties assessed against Denise Maier for tax years 2008 through 2011. *See* Exh. 4A, Tax Interest Calculations. The absence of those print-outs is not significant, however, because the government is attempting to recover identical penalties from Denise and Terry for those years (in terms of both amounts and assessment dates), meaning that the interest Denise owes for the 2008 through 2011 penalties should exactly match the interest Terry owes on those penalties.

on the forms, can only be intended to assert that the Maiers have no tax liability, or that the stamps should be accepted in exchange for the Maiers' tax liability. Similarly, the purported instructions to "discharge all presentments and related fees" and "adjust the balance to zero" are also attempts to deny any income tax liability. The stamped returns are also "based on a position which the Secretary has identified as frivolous." 26 U.S.C. § 6702(a)(2)(A). The Secretary has clearly determined that each of the filings is based on a frivolous theory, *see generally* Exh. 2B, and the Maiers' response brief makes that point even clearer (the frivolity of Maiers' arguments are discussed in detail below); *see generally* R. 65, Defs. Memo of Law.

The second major category of allegedly frivolous returns filed by the Maiers includes returns that list no income at all (call them "zero returns"). These returns clearly meet the first element for liability under § 6702(a)—they "do[] not contain information on which the substantial self-assessment may be judged." 26 U.S.C. § 6702(a)(1)(A). And like the stamped returns described above, they are based on a frivolous argument that the Maiers have no taxable income. *See generally* Exh. 2B; *see also* Defs. Memo of Law.

Finally, the Maiers submitted a Form 843, or a Claim for Refund and Request for Abatement, in November 2010, claiming they were due a refund of $5,038.50 for the 2003 tax year. The Maiers checked the box on the form that reads "Reasonable cause or other reason allowed under the law … can be shown for not assessing a penalty or addition to tax." Exh. 2B at 5. In the space provided for an explanation, the Maiers wrote, "Please see attached." *Id.* Whatever was attached, if anything, is

not included in Exhibit 2B to the government's motion. Even so, viewing the facts in the light most favorable to the Maiers, this is also a frivolous filing. The only possible inference that arises from looking at the document is that it is based on a frivolous tax position: it was intended to contest the penalties assessed three months earlier, in August 2010, and all available information points to the likelihood that the grounds on which the Maiers contested those penalties are the same frivolous positions described below. The Maiers have acknowledged that themselves: "A request for a refund of tax improperly paid due to misunderstanding how one really becomes liable for the income tax is a legitimate one." Defs. Resp. PSOF ¶ 14 (citing the Maiers' memorandum of law, which recites the same frivolous arguments described below).

The Maiers do not dispute that they failed to timely file tax returns for tax years 2003 through 2007. *See* Def. Resp. PSOF ¶ 7. They also do not dispute that the IRS determined that their filings for years 2003 through 2008, submitted from 2009 through 2011, were frivolous, or that the IRS assessed penalties for those frivolous filings. *See id*. ¶¶ 8-10. So there are no disputes of material fact on those points. Instead, the Maiers make several arguments about why they were not required to file tax returns or pay taxes for those tax years, or why they cannot be held responsible for their frivolous filings. The Court will address them here.

First, the Maiers argue that they did not intend the filings to be frivolous and did not believe their positions were frivolous ones. Defs. Resp. PSOF ¶¶ 8, 10, 15-16 ("At no point in time did the Maiers ever submit any documents that were intended

to be frivolous, baseless, or to in any way impede the administration of Federal tax law."). But § 6702(a) does not require any intent on behalf of the taxpayer. The section covers any argument that the Secretary has "identified" as frivolous—whether or not the taxpayer intends it to be. 26 U.S.C. § 6702(a)(2)(A). The Seventh Circuit has clearly held so: "We used an objective test for penalties under the tax laws [previously] and there is no reason to change that approach." *Coleman*, 791 F.2d at 72 (internal citation omitted) ("The purpose of … [§] 6702 … is to induce litigants to conform their *behavior* to the governing rules regardless of their subjective beliefs. … The contentions in this case are objectively frivolous."); *see also McLaughlin v. Comm'r.*, 832 F.2d 986, 988 (7th Cir. 1987) (explaining that in *Coleman* the court "rejected the proposition that a showing of subjective bad faith was a prerequisite to the imposition of sanctions."). Other courts agree. *See, e.g., Kahn v. United States*, 753 F.2d 1208, 1214 (3d Cir. 1985) ("Neither the statute nor the legislative history suggest a basis for any exception based upon the taxpayer's subjective state of mind. The test for frivolousness is purely an objective one."); *Bradley v. United States*, 817 F.2d 1400, 1404 (9th Cir. 1987) ("The test for frivolousness is purely an objective one."). What matters is that the documents set out frivolous tax positions—not whether the Maiers truly believed their arguments.

Second, the Maiers argue that neither of them has incurred tax liability because they have not engaged in any "privileged activities." Defs. Resp. PSOF ¶¶ 9, 11, 13, 16; R. 65, Defs. Resp. ¶ 3 ("Neither Terry James: Maier nor Denise Lynn: Maier have ever been subject to an internal revenue tax insofar as they have never

engaged in any activity that would incur such liability."); R. 65, Terry Maier Aff. ¶ 19 ("I ... never engaged in income taxable (i.e. privileged) activities that would give rise to an income tax liability between 2003 and 2011 inclusive."); R. 65, Denise Maier Aff. ¶ 19 (I ... never engaged in income taxable (i.e. privileged) activities that would give rise to an income tax liability between 2003 and 2011 inclusive"). They argue that not all income is taxable, and that "someone's earnings could only qualify as taxable (or as a measure of tax liability) if they are products of privileged activities." Defs. Memo of Law at 4. But the tax code does not, generally speaking, differentiate between sources of income. Instead, it defines gross income as "all income from whatever source derived." 26 U.S.C. § 61(a). The Seventh Circuit has repeatedly held that arguments like the Maiers' are frivolous, and that the income tax does not apply only to "privileged" activities. *See McLaughlin*, 832 F.2d at 987 ("[C]ase law in this circuit is well-settled that individuals must pay federal income tax on their wages regardless of whether they avail themselves of governmental benefits or privileges."); *Coleman*, 791 F.2d at 70 (citing 26 U.S.C. § 61(a)) ("The code imposes a tax on all income. Wages are income, and the tax is constitutional."); *United States v. Latham*, 754 F.2d 747, 750 (7th Cir. 1985) ("Latham's instruction which indicated that ... the category of employee does not include privately employed wage earners is a preposterous reading of the statute.") (cleaned up); *Lowell v. United States*, 755 F.2d 517, 519 (7th Cir. 1984) ("All individuals, natural or unnatural, must pay federal income tax on their wages, regardless of whether they received any 'privileges' from the government.").

Third, the Maiers argue that they are not taxpayers or people under the definitions of the tax code. Defs. Resp. ¶ 1 (arguing, essentially, that the named Defendants are not really the Maiers but are "private business trust accounts" for whom the Maiers are beneficiaries, and that "[a]ny earnings to said accounts are property of the trusts and are thereby non-taxable."); Defs. Resp. PSOF ¶ 12 ("Denise Lynn Maier is not a 'taxpayer' or 'person' against whom penalties can be assessed."); Terry Maier Aff. ¶¶ 1-14; Denise Maier Aff. ¶¶ 1-14. In the same vein, they argue that they "do not qualify as 'persons' to whom assessable penalties apply," Defs. Resp. at 5, because they do not fall into any of the categories listed in the definition of "person" at 26 U.S.C. § 6671(b) ("The term 'person' as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."). But the list at 26 U.S.C. § 6671(b) is not exhaustive, and the Seventh Circuit has rejected similar arguments, interpreting nearly identical provisions of the Internal Revenue Code. *See Latham*, 754 F.2d at 750 (interpreting 26 U.S.C. § 7343: "It is obvious that within the context of [the statute] the word 'includes' is a term of enlargement not of limitation, and the reference to certain entities or categories is not intended to exclude all others.").

The Maiers' arguments are ill-founded and frivolous. Even viewing the undisputed facts in the light most favorable to the Maiers, they are liable for the § 6702(a) penalties assessed against them, which are recorded in Exhibit 2A to the

government's motion, plus statutory additions and interest, as reflected in the tables at paragraphs 21 and 22 in the government's Statement of Material Facts.

## B. Tax Liability Assessments

The IRS has an ongoing obligation to "make the inquiries, determinations, and assessments of all taxes … which have not been duly paid." 26 U.S.C. § 6201(a). The IRS may base its assessments of unpaid taxes on its own "reasonable" estimations. *United States v. Flor D'Italia, Inc.*, 536 U.S 238, 243 (2002). Courts presume that IRS assessments of tax liability are correct, and the presumption "can help the Government prove its case against a taxpayer in court." *Id*. at 242. The IRS records its assessments on Forms 4340, which "establish the fact of assessment and carry with them a presumption of validity and that the assessments they reflect were properly made." *Hefti v. IRS*, 8 F.3d 1169, 1172 (7th Cir. 1993).

Because the Maiers failed to provide the IRS with reliable information about their income in the 2003 through 2007 tax years, the IRS estimated the Maiers' tax liability for those years. The assessments were "based on an examination of [the Maiers'] personal and business bank account statements, checks, and deposit transactions from third parties for tax years 2003 through 2007." PSOF ¶ 7; *see also* Defs. Resp. PSOF ¶ 7 (failing to dispute the facts laid out by the government, and implicitly acknowledging that the IRS assessed the Maiers' tax liability for 2003 through 2007 based on the documents listed above).

Attached to its motion, the government submitted all the Forms 4340 on which its assessments for the relevant tax years are recorded. The forms list Terry and

Denise's tax liability for each year. On each Form 4340, adding the numbers listed as "Estimated Tax Penalty," "Late Filing Penalty," and "Additional Tax Assessed by Examination …" for the given year and taxpayer produces the total liability for that year listed in the tables at paragraphs 17 and 18 in the government's Statement of Material Facts.[7] The Maiers have not paid those taxes since they were assessed in 2011, and IRS officer Alfred Gentry used the IRS's software to provide the total balance for each taxpayer and each year, including the interest and late fees that have accrued since the assessment date. R. 54-7, Exh. 3, Gentry Decl. ¶ 12. Gentry lists the balances at paragraphs 13 and 14 of his declaration, and the government incorporates the same balances into its Statement of Material Facts at paragraphs 21 and 22.

The Maiers do not dispute that the amounts listed in the government's calculations were the amounts assessed by the IRS audit, that the interest is calculated correctly, or that they have not made any payments on the assessed liabilities. *See* Defs. Resp. PSOF ¶¶ 17-23. Instead, they incorporate the same frivolous arguments identified above to argue that "no federal taxes are due and owing." *Id*. The Court need not discuss those arguments again here.

Additionally, the Maiers argue incorrectly that the Forms 4340 are invalid because they were not "verif[ied] under penalty of perjury … as required by 26 USC § 6065." Defs. Resp. PSOF ¶ 7. 26 U.S.C. § 6065 states that "any return, declaration, statement, or other document required to be made under any provision of the internal

---

[7]For example, compare Exh. 1 at 2 with the first row of PSOF ¶ 17: the three numbers in the middle of the page in Exh. 1 add up to the "Assessed Amount" in the table.

revenue laws or regulations shall contain or be verified by a written declaration that it is made under the penalties of perjury." The Maiers believe that this requirement applies to IRS Forms 4340. Defs. Resp. PSOF ¶ 7. But the Maiers' argument is wrong: the section only applies to documents "required to be made," which only include "documents that must be filed with the IRS, and not documents issued by the IRS," like the Form 4340. *Cermak v. United States*, 1997 WL 312261 at *2 (7th Cir. June 5, 1997) (non-precedential disposition) (citing *Morelli v. Alexander*, 920 F. Supp. 556, 558 (S.D.N.Y. 1996)). A Form 4340 simply certifies the IRS's assessment of a taxpayer's liabilities, and it need not be sworn. *See Flor D'Italia*, 536 U.S. at 242 ("An 'assessment' amounts to an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes. It is well established in the tax law that an assessment is entitled to a legal presumption of correctness.").

## C. Nominee Lien

Given that there are no material disputes as to the Maiers' liability for the penalties and assessments discussed above, the next question is whether those liabilities create liens on the Maiers' property, and if so, what property. The tax code establishes that if a person "neglects or refuses to pay [a tax] after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 16 U.S.C. § 6321. That lien arises "at the time the assessment is made." 26 U.S.C. § 6322. The Maiers do not dispute that they were

assessed the taxes and penalties described above (and as discussed above, the documentation in the Forms 4340, Exhibit 1 to the government's motion, supports that the assessments and penalties were issued), or that they failed to pay them. *See* PSOF ¶¶ 19-20; Defs. Resp. PSOF ¶¶ 17-23. So the only remaining question is whether the property at issue qualifies as "property" or "rights to property" under 26 U.S.C. § 6321, such that the United States has a valid lien on it.

Whether a certain interest in real property falls under § 6321 "is a matter of federal law." *Drye v. United States*, 528 U.S. 49, 58 (1999) (cleaned up). Courts "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Id*.

Terry and Denise co-owned the residential property beginning in 1978, and the business property beginning in 2001. If their 2007 warranty deeds purporting to convey both properties to Banbury Foundation were valid, they would no longer be the legal owners of the property. But here the government argues that Banbury Foundation was really just the Maiers' nominee, so the United States can recover against its property just as it could recover against property to which the Maiers themselves held legal title.

A nominee is someone who holds legal title for the benefit of another person— in this context, a taxpayer. *See United States v. Swan*, 467 F.3d 655, 658 (7th Cir. 2006). Because the nominee does not hold a valid ownership interest in the property,

a creditor of the property's *true* owner can recover against it—even though the true owner is not the legal title holder. *See id.* ("Suppose a person who wants to evade taxes parks his property with a friend or family member. That would be a fraudulent conveyance, and so the person to whom the property was conveyed would be deemed the taxpayer's 'nominee' and forced to cough it up."). Because "Illinois courts have never articulated a detailed standard for what constitutes a nominee," federal courts apply federal law in the analysis. *United States v. Szaflarski*, 614 Fed. App'x. 836, 838 (7th Cir. 2015) (non-precedential disposition). Courts "consider several factors in determining whether a titleholder is actually serving as a nominee for the benefit of another." *Id.* The factors include:

> (1) whether there is a close personal relationship between the nominee and the transferor; (2) the nominee paid little or no consideration for the property; (3) the parties placed the property in the name of the nominee in anticipation of collection activity; (4) the parties did not record the conveyance; and, (5) the transferor continues to exercise dominion and control over the property.

*Id.* at 838-839; *see also Stone v. United States*, 2014 WL 1289788, at *10-11 (N.D. Ill. March 31, 2014) (applying the same five factors).

Applying the five factors here, it is clear that Banbury is the Maiers' nominee. The first factor seems to contemplate that the nominee will be another person (as opposed to an organization), but it fits here, too. The Maiers "operate a mailbox which doubles as Banbury's mailing address," PSOF ¶ 39, and Denise used the residential property's address on her driver's license up until at least 2012, *id.* ¶ 40. The second factor also weighs toward finding that Banbury is a nominee: Banbury only paid $10 for each of the properties. *Id.* ¶ 30; Defs. Resp. PSOF ¶ 30 The third factor is fulfilled

by the Maiers' own admissions: "The reason for acquiring an alternative business name was prompted when a suit affecting property was threatened to be filed." Answer ¶ 53; *see also id.* ¶ 62 ("Banbury Financial Group is the means by which Agents of Record/Beneficiaries decided to hold property as a means of asset protection, initiated at a time when property was threatened by a suitor."). It does not matter whether the Maiers were attempting to hide the property from the government or from someone else: either way, it is clear they transferred the assets to hide them. Finally, it is clear the Maiers continue to control the property. They live there, have control over Banbury's mailing address, and even refer to themselves as the "beneficiaries" of the property. PSOF ¶¶ 33-40; Defs. Resp. PSOF ¶¶ 33-40; Answer ¶ 62. Of course, the Maiers did record the conveyance, tipping the scales slightly against viewing Banbury as their nominee. But against the weight of the other evidence, their recordation means little. Banbury is clearly holding the property on their behalf.

Because Banbury is the Maiers' nominee, the government's nominee liens on both properties are valid.

### D. Remaining Arguments in Defendants' Motion

Beyond the arguments discussed above, the Maiers' filing at R. 65 makes two additional arguments that the Court will address briefly here.

First, the Maiers argue that this Court does not have personal jurisdiction over them. R. 65, Defs. Resp. at 1-2. But 26 U.S.C. § 7402(b) grants jurisdiction over "any person [] summoned under the internal revenue laws to appear" for "the district court

of the United States for the district in which such person resides." Both Terry and Denise Maier live in Kendall County. Defs. Resp. PSOF ¶ 6. Because Kendall County is within this District, the Court has personal jurisdiction over the Maiers.

The Maiers further argue that Defendant Banbury was not served. Defs. Resp. PSOF ¶ 4. That is wrong: Banbury was served in December 2017. R. 9, Aff. of Service of Banbury Foundation Group; *see also* R. 62, Default J. Order at 1.

To the extent the Maiers intended their filing at R. 65 to be a cross-motion for summary judgment, their motion is denied. Viewing the facts in the light most favorable to the government, the Maiers have no viable arguments that would support judgment for them.

## IV. Conclusion

For the reasons stated above, the Maiers' cross-motion for summary judgment is denied. The government's motion is granted. The Court will enter judgment as follows: as of June 22, 2018, Terry James Maier owed the United States $1,764,433.80, and Denise Maier owed the United States $1,857,881.82. The United States is entitled to recover those sums from the Maiers, along with any interest that has since accrued.[8] The Court also declares that the government may also foreclose

---

[8]Interest accrues "by operation of statute," as set out at 26 U.S.C. § 6601(e)(2) and 26 U.S.C. § 6621(a)(2). *United States v. Schroeder*, 900 F.2d 1144, 1150 n.5 (7th Cir. 1990).

on both properties to which title is held by Banbury, because Banbury is the Maiers'
nominee.

ENTERED:

       s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 28, 2019